AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>**A-1: An Apple I-Phone 7; SN: F72D47ZXHG6W;**<br>**A-2: A Purple I-Phone, Unknown Model; Unknown Serial Number; and,**<br>**A-3: A Black I-Phone, Unknown Model; Unknown Serial Number.** | Case No. 22-3000 MB<br><br>**(Filed Under Seal)** |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A-1, A-2, and A-3.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___2-7-22___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: <u>1-24-22 @ 11:21 A.M.</u>     <u>M Morrissey</u>
                                                                   *Judge's signature*

City and state: <u>Phoenix, Arizona</u>          <u>Honorable Michael T. Morrissey, U.S. Magistrate Judge</u>
                                                                   *Printed name and title*

## ATTACHMENT A-1

*Property to be searched*

The property to be searched is described as the following:

An Apple I-Phone 7, SN: F72D47ZXHG6W including any and all SIM and media storage cards contained within phone, which was seized from JACKSON's person. (hereafter, **"SUBJECT CELLULAR TELEPHONE 1"**).

**SUBJECT CELLULAR TELEPHONE 1** is currently located in the ATF Phoenix Field Division office, located at 40 N Central, Suite 1000, Phoenix, Arizona and impounded into evidence as item number 9.

## ATTACHMENT A-2
*Property to be searched*

The property to be searched is described as the following:

A purple I-Phone, unk model, unk SN, located on the kitchen counter. The search is to include any and all SIM and media storage cards contained within phone. (hereafter, **"SUBJECT CELLULAR TELEPHONE 2"**)

The **SUBJECT CELLULAR TELEPHONE 2** is currently located in the ATF Phoenix Field Division office, located at 40 N Central, Suite 1000, Phoenix, Arizona and impounded into evidence as item number 4.

## ATTACHMENT A-3

*Property to be searched*

The property to be searched is described as the following:

A black I-Phone, unk model, unk SN, located on FOWLER's person. The search is to include any and all SIM and media storage cards contained within phone. (hereafter, **"SUBJECT CELLULAR TELEPHONE 3"**)

The **SUBJECT CELLULAR TELEPHONE 3** is currently located in the ATF Phoenix Field Division office, located at 40 N Central, Suite 1000, Phoenix, Arizona and impounded into evidence as item number 5.

## ATTACHMENT B

*Property to be seized*

1.      All records found within the digital contents of the **SUBJECT CELLULAR TELEPHONES** described in Attachment A-1, A-2, and A-3 including:

   a.   all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

   b.   all information related to buyers or sources of firearms, firearms parts or accessories, or ammunition (including names, addresses, telephone numbers, locations, or any other identifying information);

   c.   all bank records, checks, credit card bills, account information, or other financial records;

   d.   all information regarding the receipt, transfer, possession, transportation, or use of proceeds of firearms, firearms parts or accessories, or ammunition;

   e.   any information recording schedule or travel;

   f.   records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

   g.   evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

   h.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

   i.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      j.   contextual information necessary to understand the evidence described in this attachment.

2.      Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONES** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:_____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>**A-1: An Apple I-Phone 7; SN: F72D47ZXHG6W;**<br>**A-2: A Purple I-Phone, Unknown Model; Unknown Serial**<br>**Number; and,**<br>**A-3: A Black I-Phone, Unknown Model; Unknown Serial**<br>**Number.** | Case No. 22-3000MB<br><br>**(Filed Under Seal)** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A-1, A-2, and A-3**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(a)(1)(A) | False Statement During Purchase of a Firearm |
| 18 U.S.C. § 922(a)(6) | False Statement in Connection with the Acquisition of a Firearm |
| 18 U.S.C. §§ 922(g)(5) | Possession of a Firearms/Ammunition by an Alien unlawfully present in the United States |

The application is based on these facts:

**See attached Affidavit of Special Agent Aimet Morales**

☒ Continued on the attached sheet.

☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Addison Santome

ADDISON SANTOME   Digitally signed by ADDISON SANTOME
Date: 2022.01.24 08:37:51 -07'00'

AIMET MORALES   Digitally signed by AIMET MORALES
Date: 2022.01.24 08:31:18 -07'00'

_Applicant's Signature_

Special Agent Aimet Morales, The Bureau of Alcohol, Tobacco, Firearms, and Explosives

_Printed name and title_

Sworn to before me telephonically and signed electronically.

Date: 1-24-22 @ 11:21 AM.

M Morrissey

_Judge's signature_

City and state: Phoenix, Arizona

Honorable Michael T. Morrissey, U.S. Magistrate Judge

_Printed name and title_

## ATTACHMENT A-1

*Property to be searched*

The property to be searched is described as the following:

An Apple I-Phone 7, SN: F72D47ZXHG6W including any and all SIM and media storage cards contained within phone, which was seized from JACKSON's person. (hereafter, **"SUBJECT CELLULAR TELEPHONE 1"**).

**SUBJECT CELLULAR TELEPHONE 1** is currently located in the ATF Phoenix Field Division office, located at 40 N Central, Suite 1000, Phoenix, Arizona and impounded into evidence as item number 9.

## ATTACHMENT A-2
*Property to be searched*

The property to be searched is described as the following:

A purple I-Phone, unk model, unk SN, located on the kitchen counter. The search is to include any and all SIM and media storage cards contained within phone. (hereafter, **"SUBJECT CELLULAR TELEPHONE 2"**)

The **SUBJECT CELLULAR TELEPHONE 2** is currently located in the ATF Phoenix Field Division office, located at 40 N Central, Suite 1000, Phoenix, Arizona and impounded into evidence as item number 4.

2

## ATTACHMENT A-3

*Property to be searched*

The property to be searched is described as the following:

A black I-Phone, unk model, unk SN, located on FOWLER's person. The search is to include any and all SIM and media storage cards contained within phone. (hereafter, "**SUBJECT CELLULAR TELEPHONE 3**")

The **SUBJECT CELLULAR TELEPHONE 3** is currently located in the ATF Phoenix Field Division office, located at 40 N Central, Suite 1000, Phoenix, Arizona and impounded into evidence as item number 5.

3

## ATTACHMENT B

*Property to be seized*

1.  All records found within the digital contents of the **SUBJECT
CELLULAR TELEPHONES** described in Attachment A-1, A-2, and A-3 including:

   a.  all information related to the sale, purchase, receipt, shipping,
   importation, transportation, transfer, possession, or use of firearms,
   firearms parts or accessories, or ammunition;

   b.  all information related to buyers or sources of firearms, firearms parts or
   accessories, or ammunition (including names, addresses, telephone
   numbers, locations, or any other identifying information);

   c.  all bank records, checks, credit card bills, account information, or other
   financial records;

   d.  all information regarding the receipt, transfer, possession,
   transportation, or use of proceeds of firearms, firearms parts or
   accessories, or ammunition;

   e.  any information recording schedule or travel;

   f.  records of or information about the cellular telephone's Internet activity,
   including firewall logs, caches, browser history and cookies,
   "bookmarked" or "favorite" web pages, search terms that the user
   entered into any Internet search engine, and records of user-typed web
   addresses;

   g.  evidence of the attachment to the cellular telephone of another storage
   device or similar container for electronic evidence;

   h.  evidence of counter-forensic programs (and associated data) that are
   designed to eliminate data from the cellular telephone;

       i.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

       j.   contextual information necessary to understand the evidence described in this attachment.

2.     Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONES** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

5

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Aimet Morales, being first duly sworn, hereby depose and state as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine

- A-1: **"SUBJECT CELLULAR TELEPHONE 1"** as further described in Attachment A-1;
- A-2: **"SUBJECT CELLULAR TELEPHONE 2"** as further described in Attachment A-2; and
- A-3: **"SUBJECT CELLULAR TELEPHONE 3"** as further described in Attachment A-3;

(hereafter referred to collectively as **"SUBJECT CELLULAR TELEPHONES"**) in order to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of criminal violations further described below.

2.     I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since February of 2005. I am presently a member of the ATF Phoenix Field Division's Group I. As a Special Agent of the ATF, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal and state laws. I have participated in the use of cooperating informants, undercover agents, pen register/trap and trace devices, video surveillance, wiretaps, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques, during the course of my career with ATF.  Additionally, I have participated in numerous controlled buys of firearms and narcotics from targets of law enforcement

6

investigations. Based on training and experience, I am familiar with methods used for firearms trafficking and narcotics trafficking.

3.      The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge; training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; and, analysis of telephone records.

4.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.      THE SUBJECT OFFENSES

5.      Under 18 U.S.C. § 924(a)(1)(A), False Statement During Purchase of a Firearm, it is unlawful if a person knowingly makes any false statement or representation with respect to the information required by Chapter 44 to be kept in the records of a person licensed under Chapter 44 in connection with the acquisition of firearms.

6.      Under 18 U.S.C. § 922(a)(6), False Statement in Connection with the Acquisition of a Firearm, it is unlawful if a person knowingly makes false statements and representations in connection with the acquisition of a firearm which is intended to and likely to deceive the licensed dealer as to a fact material to the lawfulness of a sale.

7.      Under 18 U.S.C.§§ 922(g)(5), Possession of a Firearms/Ammunition by an Alien unlawfully present in the United States, makes it unlawful for certain categories of persons to ship, transport, receive, or possess firearms or ammunition within interstate commerce if they are knowing illegally or unlawfully in the United States.

8.      All above listed violations referred to collectively as "**SUBJECT OFFENSES**".

7

### III.   **PROBABLE CAUSE**

9.      In May of 2021, Your Affiant interviewed Stephen BUTLER regarding his involvement in dealing firearms without a Federal Firearms License (FFL). BUTLER admitted to selling multiple firearms as part of his private sales. When asked who he sold multiple firearms to, he provided a telephone number. He stated he knew the subject as "Coy". BUTLER stated he sold "Coy" about 5 guns total to include, "a couple of Rugers 5.7, an FN 5.7 and one or two Pioneer Arms Hellpup AK pistols". He recalled that "Coy" always talked about how crazy times were and that he wanted to keep his family safe.

10.      SA Morales identified that number as belonging to Coy Travis JACKSON. Preliminary inquiries conducted on JACKSON resulted in identifying 2 multiple firearm sale purchases from Federal Firearms Licensees, but no prohibiting history.

11.      In August 2021, SA Morales received additional information that a subject named "Coy JACKSON" was purchasing a high volume of firearms between May 2021 and August 2021 from different FFLs. Due to the large quantity of firearm purchases, SA Morales decided to conduct a consensual interview.

### **Interview with Suspect**

12.      During multiple firearm purchases, JACKSON listed 1824 W. Ray Road Unit XXXX, Chandler, Arizona 85224 ("Chandler address") as his current residence on the ATF Form 4473.

13.      On September 2, 2021, SA Morales and SA White attempted to contact JACKSON at the Chandler address. SA Morales made contact with the current occupant. The current occupant stated they have been residing at the Chandler address since January 2021. When shown a Motor Vehicle Department picture associated with Coy JACKSON's Driver's License, the current occupant did not recognize the photo or name.

8

14.     After the unsuccessful contact attempt, SA Morales was informed by United States Postal Inspector Andrea Brandon that JACKSON and Kelli FOWLER had forwarded their mail to 1133 W 5th Street Apt XX, Tempe AZ ("Tempe Address") on November 30, 2020.

15.     On that same day, SA Morales and SA White made positive contact with JACKSON at the Tempe Address. Agents were greeted by JACKSON who advised he had to be at work in 40 minutes, but he was willing to speak with agents for as long as he could.

16.     JACKSON identified himself with an Arizona Driver's License in the name of "Coy JACKSON". JACKSON resembled the photograph on the Arizona Driver's License, which was the same photo previously shown to the occupant at the Chandler address.

17.     SA Morales noticed the Chandler address was listed on his Arizona Driver's License. JACKSON stated that he moved out of the Chandler address the week prior. This is inconsistent with the current occupant's statement and the November 30, 2020 request to forward his mail.

18.     When asked about his firearm purchases, JACKSON stated that he has purchased about 100 firearms and claimed he purchased all of them from gun stores. When asked where the firearms were at, JACKSON advised that he had them stored in a storage unit near Mesa, AZ. He stated that he was purchasing a large quantity of firearms to prepare for the apocalypse.

19.     JACKSON agreed to show agents all his firearms at the storage unit the following week. JACKSON denied selling any of the firearms he has ever purchased. SA Morales attempted to explain to him that if he ever wished to sell a firearm it would be best to utilize an FFL since he had so many, JACKSON was adamant that he had never sold a firearm and did not plan on selling his firearms. ATF has no information indicating that any of the firearms purchased by JACKSON have been recovered.

9

20.     JACKSON provide SA Morales with the same telephone number previously provided by BUTLER to coordinate a meeting the following week.

21.     The following week, SA Morales attempted to contact JACKSON, as agreed upon, to view the firearms. The call went straight to voicemail. To date, JACKSON has not returned the call or the text message.

22.     After interviewing JACKSON, SA Morales contacted the owner of the Chandler address who advised that Coy Travis JACKSON was never on the lease. They advised that the current tenant's term began in January 2021. The prior tenant, Kelli FOWLER, lease had ended in December 2020.

23.     Given the current occupant of the Chandler address moved into that location in January 2021, the owner of the Chandler address confirmed the current occupant moved into the apartment in January 2021, and a request for mail forwarding was filed November 30, 2020, it is believed that JACKSON was not residing at the Chandler address during the firearms purchases between April 2021 and August 2021.

**Firearm Purchases**

24.     Your Affiant knows that firearm dealers, known as Federal Firearm Licensees (FFL), are licensed under and required by Chapter 44 to complete and maintain an ATF Form 4473, Firearms Transaction Record, for all firearms sold. A purchaser of a firearm from an FFL is required to fill out the ATF Form 4473 that requests basic biographical information, including the current address for the individual's residence, and requires the individual to truthfully answer a series of questions regarding the firearm purchase.

25.     SA Morales reviewed the following ATF Form 4473's for all the transactions listed below. For each transaction, JACKSON completed Section B of the ATF Form 4473. Under Question 9 (Section B), entitled, "Transferee's/Buyer's Full Name," JACKSON

wrote down "Coy Travis JACKSON." Under Question 10, entitled, "Current State of Residence and Address," JACKSON wrote the Chandler address.

26.     Additionally, under section 19, entitled "Country of Citizenship" (note, nationals of the United States, may check U.S.A), JACKSON checked off "U.S.A." Under question 20, entitled "If you are an alien, record your US issued alien or admission number" JACKSON left it blank. Under Question 21(k), entitled "are you an alien illegally or unlawfully in the United States", JACKSON checked off, "no". Under question 21.1.1 "are you an alien who has been admitted to the United Stated under a nonimmigrant visa?" Jackson checked off, "No"

27.     JACKSON then certified his responses in Section B, by signing in Block 22. Block 22 is where the transferee is advised that any false information on the ATF Form 4473 is a felony offense. JACKSON signed the Form 4473, affirming that the information he provided on the form is "true, correct and complete."

28.     JACKSON purchased thirty-three firearms from six different FFLs between April 28, 2021 and August 24, 2021. JACKSON completed ATF Form 4473 in the same manner as described above in each of the following transactions:

| Date Form Completed | FFL | Number of Firearms | Firearm Transfer Date |
|---|---|---|---|
| April 28, 2021 | Robson Armory (Gilbert, AZ) | 1 | May 4, 2021 |
| May 3, 2021 | AZ Guns (Chandler, AZ) | 5 | May 12, 2021 |
| May 12, 2021 | 2A Ballistic Solutions (Tempe, AZ) | 2 | May 18, 2021 |
| May 18, 2021 | Robson Armory (Gilbert, AZ) | 1 | May 24, 2021 |
| June 5, 2021 | Moat Arms (El Mirages, AZ) | 2 | June 5, 2021 |
| June 5, 2021 | Robson Armory (Gilbert, AZ) | 1 | June 11, 2021 |
| June 7, 2021 | AZ Guns (Chandler, AZ) | 1 | June 11, 2021 |
| June 12, 2021 | Moat Arms (El Mirage, AZ) | 3 | June 19, 2021 |
| July 23, 2021 | Robson Armory (Gilbert, AZ) | 2 | July 29, 2021 |
| August 9, 2021 | AZ State Armory (Peoria, AZ) | 4 | August 10, 2021 |
| August 16, 2021 | Robson Armory (Gilbert, AZ) | 2 | August 20, 2021 |

11

| August 22, 2021 | Moat Arms (El Mirage, AZ) | 2 | August 29, 2021 |
| August 24, 2021 | Robson Armory (Gilbert, AZ) | 1 | August 31, 2021 |
| July 27, 2021 | Sammy D's Discount Arms (Glendale, AZ) | 3 | August 4, 2021 |
| August 23, 2021 | Sammy D's Discount Arms (Glendale, AZ) | 3 | August 29, 2021 |

### Identification of Akiel JACKSON

29.     After JACKSON failed to follow through with a second meeting, SA Morales reviewed a criminal history for Coy Travis JACKSON with DOB XX/XX/1987 and noticed two separate linked FBI numbers. The first FBI number was XXXXXXD1 with the name of Coy JACKSON (DOB XX/XX/1987). All the criminal history under this name occurred in the State of New York. This record did not list any aliases or prior names used; it was solely Coy Travis JACKSON. This record does not appear to be associated with any prior felony convictions.

30.     SA Morales contacted New Windsor Town Police Department in New York and requested information on Coy Travis JACKSON listed under FBI number XXXXXXD1. The police department provided identifiers and a photograph of Coy Travis JACKSON (DOB XX/XX/1987). This photograph did not resemble the same subject as pictured on the Arizona Driver's License who SA Morales had interviewed.

31.     The second FBI number was XXXXXXC4 with the name of Alhafeez Mchamad WILSON. All criminal history under this FBI number appeared to be in Arizona. SA Morales pulled police reports associated to this criminal history and noticed Coy Travis JACKSON was the name used during those police contacts. SA Morales noticed that this criminal history had multiple AKAs to include Coy JACKSON and Akiel JACKSON.

12

32. Additionally, SA Morales noticed in a 2020 Glendale Police Report JACKSON told law enforcement he is an immigrant, and his real name is Akiel JACKSON, not Coy JACKSON.

33. SA Morales contacted Homeland Security Investigations (HSI) and requested a status check on Akiel JACKSON, Coy JACKSON and Alhafeez WILSON.

34. HSI obtained a positive identification on Akiel Ruel JACKSON with FBI # XXXXXXC4, matching the second FBI number. HSI provided a known photograph of Akiel JACKSON. The known photograph of Akiel JACKSON appears to be the same subject pictured on the Arizona Driver's License under the name of Coy JACKSON who admitted to SA Morales that he purchased 100 firearms.

35. The known fingerprint associated with the HSI profile is linked to FBI # XXXXXXC4.

36. Given the Arizona Driver's License photograph resembles the known photographs of Akiel JACKSON on file with HSI; both the Arizona Driver's License and known HSI photographs resembled the individual SA Morales interviewed; the known print matches the FBI number associated with the Arizona contacts; JACKSON's statements to Glendale Police Department in April 2020 regarding his true name and status; and, JACKSON's confirmation that he purchase the firearms in questions, there is reason to believe that JACKSON's true and correct identity is Akiel JACKSON, and not Coy JACKSON.

**Prohibited Possessor Status**

37. Subsequently, Immigration records revealed Akiel JACKSON's is a citizen of Jamaica. It was determined JACKSON was in the United States illegally and excludable and/or deportable.

13

38.     Akiel JACKSON previously retained counsel to pursue status in the United States. However, his requests have been denied. At an October 2021 hearing, JACKSON was ordered deportable. Due to his status, he is prohibited from possessing firearms.

39.     SA Morales believes that Akiel JACKSON is using the identity of Coy Travis JACKSON and obtained an Arizona Driver's license under that name. Akiel JACKSON is utilizing that identity, Arizona Driver's License, and subsequent criminal history to purchase a large quantity of firearms. Akiel JACKSON is prohibited from possessing firearms and would not be able to purchase firearms if utilizing his true identity.

**Interview with FFLs**

40.     On September 9, 2021, SA Morales spoke to Sam Dicarlo, owner of Sammy's Discount, an FFL who stated that JACKSON last picked up firearms on August 29, 2021. He stated that as part of each transaction, he asks if the information on the identification is correct, he stated that he will not conduct the sale if it is not. He stated that JACKSON was delayed but later picked up the firearms. JACKSON provided the same cellular phone number previously provided by BUTLER.

41.     On the same date, SA Morales contacted Andrew Einwiller, owner of MOAT Arms, an FFL. He recalled the last transaction was on August 29, 2021, where Jackson picked up the firearms previously purchased. He described JACKSON as a black male, approximately 5'7", muscular with dread locks. JACKSON received a proceed after conducting the first background check and was delayed after that. He stated that he recalled asking JACKSON if that was where he lived, JACKSON stated yes. This description is consistent with Akiel JACKSON.

42.     Einwiller provided video surveillance of JACKSON arriving to the business in a silver sedan on August 29, 2021. The subject on the video surveillance appears to be the same subject who SA Morales interviewed on September 2, 2021, who is utilizing an

14

Arizona Driver's License with the name of Coy Travis JACKSON. Einwiller provided a copy of the Arizona Driver's License used to buy guns. Einwiller stated that JACKSON told him he was buying two guns to keep one on himself and another in his car.

## Historical Cell Site Data

43.     In October 2021, SA Morales received historical toll records with cell-site location information. The results revealed that JACKSON's phone was subscribed to by Akiel JACKSON. In addition, the cell phone's location was in the area of Sky Harbor Airport on September 4, 2021, two days after being interviewed, and subsequently identified in Fort Lauderdale that afternoon, leading SA Morales to believe he flew to Florida on that date. The cell phone was utilized in the Fort Lauderdale area until its last use on September 7, 2021, the day SA Morales called and text him to meet up to look at the firearms.

44.     In an effort to identify a new cell phone number being used by JACKSON, a series of analyses were conducted. The results determined a new possible new number for JACKSON.

45.     SA Morales obtained a search warrant for JACKSON's call detail records and cell site information for the new number. This warrant requested data from August 15, 2021 through November 1, 2021.

46.     Upon receipt, the records were reviewed and analyzed. It was determined that the new number was subscribed to by Kelli FOWLER and was activated on September 2, 2021, just hours after ATF interviewed JACKSON about his firearm purchases. In addition, the records indicate that on September 4, 2021, the phone was in the area of the Sky Harbor Airport. Hours later, it was in the area of Fort Lauderdale, Florida. This information demonstrated the same historical location pattern that JACKSON's previous known number displayed. The cell cite information indicates the new telephone has

15

remained in the Florida area since September 4, 2021 through November 1, 2021, the last date of historical data.

47.    On November 19, 2021, SA Morales obtained a tracking warrant for the new number and identified the current location to still be in Florida.

## Kelli FOWLER's Firearm Purchases

48.    During the course of this investigation, SA Morales identified JACKSON was residing with Kelli FOWLER. In October 2021, SA Morales learned that FOWLER also purchased approximately twenty-five firearms between March 1, 2021 and May 6, 2021, resulting in a separate investigation into the large amount of firearm purchases.

49.    On October 6, 2021, the Bureau of Alcohol, Tobacco, Firearms, & Explosives, SA Morales reviewed the following ATF Form 4473's for all the transactions listed below. For each transaction (except 1), FOWLER completed Section B of the ATF Form 4473. Under Question 9 (Section B), entitled, "Transferee's/Buyer's Full Name," FOWLER wrote down "Kelli FOWLER." Under Question 10, entitled, "Current State of Residence and Address," FOWLER wrote the 3606 E Baseline Rd, Phoenix, Arizona ("Phoenix Address").

50.    For the transaction dated March 1, 2021, Under Question 10 (Section B), entitled, "Current State of Residence and Address," FOWLER wrote 1825 W Ray Rd, Chandler Arizona ("Chandler Address").

51.    FOWLER then certified her responses in Section B, by signing in Block 22. Block 22 is where the transferee is advised that any false information on the ATF Form 4473 is a felony offense. FOWLER signed the Form 4473, affirming that the information she provided on the form is "true, correct and complete."

52.    On June 30, 2021, Special Agents with the ATF attempted to contact FOWLER at the Phoenix address. Although FOWLER did not indicate a unit number on

16

the form, nor is one indicated on her Arizona identification, Agents located unit #XX5 as being associated to her through open-source queries.

53.     Agents contacted the current occupants and learned that FOWLER did not reside at unit XXX and were informed by the leasing office that FOWLER was not on the lease, nor did they recognize her or her name.  In addition, agents were informed by the leasing manager that the current occupants in unit #XXX had been there for approximately 2 years from the date of this interview.

54.     On November 15, 2021, SA Morales served a subpoena to Cortland at Raven Apartment located at 3606 E Baseline Rd, Phoenix, Arizona. The request was for any tenant information, leasing agreements and applications for Kelli Fowler, Coy JACKSON and/or Akiel JACKSON. On the same date, the complex returned the subpoena citing there was no record of residency for the above subjects at their complex.

55.     Given the apartment complex had no record of residency and the request to forward mail to Tempe address was filed in November 2020, it is believed that FOWLER was not residing at Phoenix address during the firearms purchases between March 2021 and May 2021.

56.     SA Morales was also shown a video of a firearm transaction previously obtained from Arizona Firearms, an FFL in Gilbert, where FOWLER was accompanied by a male fitting the description of JACKSON. Based on your affiants training and experience, subjects who are unable to lawfully purchase firearms from FFL's often request others to straw purchase a firearm on their behalf or purchase firearms from private sellers like BUTLER. Given his prohibited status, observing JACKSON with FOWLER at an FFL together leads your affiant to suspect a straw purchase.

57.     FOWLER completed ATF Form 4473 in the same manner as described above in each of the following transactions:

| Date Form Completed | FFL | Number of Firearms | Firearm Transfer Date |
|---|---|---|---|
| 4/8/2021 | Az Guns | 2 | 4/8/2021 |
| 5/2/2021 | Az Guns | 2 | 5/2/2021 |
| 5/3/2021 | Az Guns | 2 | 5/3/2021 |
| 4/17/2021 | One Stop Firearms | 2 | 4/17/2021 |
| 5/1/2021 | Kme Firearms | 3 | 5/1/2021 |
| 4/17/2021 | Outlaw Larry's | 2 | 4/17/2021 |
| 3/1/2021 | Robson Armory | 2 | 3/1/2021 |
| 4/12/2021 | Robson Armory | 1 | 4/12/2021 |
| 4/15/2021 | Robson Armory | 1 | 4/15/2021 |
| 4/24/2021 | Gabbert's Gun shop | 2 | 4/24/2021 |
| 4/21/2021 | Gabbert's Gun shop | 1 | 4/21/2021 |
| 4/26/2021 | Ashworth Armory | 2 | 4/26/2021 |
| 5/04/2021 | Arizona Firearms | 1 | 5/4/2021 |
| 5/6/2021 | Boulder Street Armory | 2 | 5/6/2021 |

## Arrest and Residential Search Warrant

58.     On December 14, 2021 in the District of Arizona, JACKSON was indicted on fifteen (15) counts of violations of 18 U.S.C. § 924(a)(1)(A), False Statement During Purchase of a firearm; fifteen (15) counts of violations of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), False Statement in Connection with a Firearm Purchase; and, nine (9) counts of violation of 18 U.S.C. §§ 922(g)(5), Possession of a Firearms by Alien Unlawfully Present in the United States under, case number CR21-01030-001-PHX-SMB. A warrant was issued for his arrested.

59.     In addition, SA Morales obtained a Federal search warrant for FOWLER and JACKSON's residence in Arizona located at 1133 W 5th St #XX, Tempe Arizona. The warrant was authorized by Federal Magistrate Michelle H. Burns of the District Court of Arizona under search warrant 21-368MN.

60.     On that same date at approximately 10:00 PM Eastern, ATF agents arrested JACKSON in Florida without incident.

18

61.    JACKSON acknowledged using both names, Akiel and Coy.

62.    During the arrest, JACKSON was found to be in possession of **"SUBJECT CELLULAR TELEPHONE 1."** JACKSON provided the code to **"SUBJECT CELLULAR TELEPHONE 1."** The device was seized and impounded into ATF evidence as item #9. This device was subsequently shipped to and received by the Phoenix, ATF office.

63.    On that date, ATF Agents executed the residential search warrant in Arizona. FOWLER was contacted at the residence and interviewed during the execution of the search.

64.    During the search, ATF agents located a safe in the master bedroom. Agents located, one (1) firearm in the safe along with ammunition. The firearm trace revealed it was purchased by JACKSON in September of 2020.

65.    In addition, **SUBJECT CELLULAR TELEPHONE 2** was located on the kitchen counter and **SUBJECT CELLULAR TELEPHONE 3** was on FOWLER's person. Both **SUBJECT CELLULAR TELEPHONE 2** and **SUBJECT CELLULAR TELEPHONE 3** were seized. **SUBJECT CELLULAR TELEPHONE 2** was entered into ATF evidence as item #4 and **SUBJECT CELLULAR TELEPHONE 3** was entered into ATF evidence #5. FOWLER acknowledged both phones belonged to her and provided the access codes to both phones.

66.    During the interview, FOWLER was shown a photograph of JACKSON from that evening's arrest. FOWLER stated that was "Coy" JACKSON.

67.    When asked about her firearm purchases, she stated that she purchased over 20 firearms and would give them directly to JACKSON to store in a storage unit in Mesa. She stated that JACKSON would go with her during each firearm transaction. She stated they were preparing for the apocalypse and acknowledged that both she and JACKSON were purchasing firearms. She claimed she did not know how many firearms JACKSON

19

purchased himself. She denied straw purchasing the firearms for anyone else other than themselves; However, she could not account for any of the firearms.

68.     She advised that she obtained some money when her aunt passed away and further stated they both were employed and had money for the purchase of the firearms. She denied knowing where the firearms were currently at nor where the storage unit was located. She also denied knowing JACKSON's immigration issues only stating that she knew he had an immigration hearing but did not know if he went.

69.     She stated that he had left for Florida to visit family in September and did not know when he would return. She stated they were still together and communicating and advised that he obtained a new number under her account prior to leaving to Florida and could not explain why he changed his number.

70.     The **SUBJECT CELLULAR TELEPHONES** are currently at the ATF Phoenix Field Division, 40 N Central Ste 1000, Phoenix, Arizona 85004.

71.     Based on historical toll records, JACKSON and FOWLER are in constant communication with each other. Your Affiant believes that the **SUBJECT CELLULAR TELEPHONES** may contain evidence of JACKSON's attempts to purchase or acquire firearms or ammunition as well as additional evidence supporting that JACKSON and FOWLER made misrepresentations on the Form 4473s he filled out.

72.     In addition, the **SUBJECT CELLULAR TELEPHONES** may show evidence of a storage unit or evidence of the current location of the firearms unlawfully purchased by JACKSON and FOWLER.

73.     Based on my training and experience, I further know that cellular phones are used to facilitate criminal activities. Not only are phones used to communicate, but phones also store pictures, written conversations, and GPS location of device. I believe that contained within JACKSON's and FOWLER's devices (including their respective SIM

20

cards and media cards previously specified) are fruits, instrumentalities, and evidence of **SUBJECT OFFENSES.**

IV.     **DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE**

74.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **SUBJECT CELLULAR TELEPHONES**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

75.     *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the **SUBJECT CELLULAR TELEPHONES** for at least the following reasons:

a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.  The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the

21

communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

      c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

76.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **SUBJECT CELLULAR TELEPHONES** because:

      a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a

deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.   Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.   For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet.   Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation.   Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect.   For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data.   Such file data typically also contains information indicating when the file or image was created.   The geographic and timeline information described herein may either inculpate or

23

exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

77.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise

24

copying the contents of the **SUBJECT CELLULAR TELEPHONES**, including the use of computer-assisted scans.

78.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.     CONCLUSION

Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of **SUBJECT OFFENSES** are likely to be found in the contents of the **SUBJECT CELLULAR TELEPHONES** as further described in Attachment A-1 and A-2 and A-3.

AIMET
MORALES

Digitally signed by AIMET
MORALES
Date: 2022.01.24 08:32:43
-07'00'

Special Agent Aimet Morales
The Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this ___24___ day of ___Jan.___, 2022.

M Morrissey

HONORABLE DUTY MICHAEL T. MORRISSEY
United States Magistrate Judge

25